IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RITA L. GONZALEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17 C 2011 |
| ) | |
| TAPE CASE LTD., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Rita L. Gonzalez has sued her former employer, Tape Case, Ltd. She alleges that Tape Case terminated her on the basis of her age, race, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and the Age Discrimination in Employment Act (ADEA). 29 U.S.C. § 623(a). Gonzalez also asserts a state law claim based on Tape Case's violation of its employee handbook. Tape Case has moved for summary judgment on Gonzalez's claims. Both parties have also moved for sanctions.

### Background

Tape Case contends that Gonzalez submitted a statement of facts that did not comport with Local Rule 56.1, as some of the factual statements contained improper argument or were unsupported by the cited evidence. The Court takes note of these issues and relies on the underlying record. On a motion for summary judgment, the Court reviews the facts in the light most favorable to the nonmoving party, without

vouching for the accuracy of those facts. *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

Gonzalez is a former employee of Tape Case, a manufacturing company that distributes specialized adhesive tapes. It receives customer orders, prepares the tapes to the customer's specifications, and readies them for shipment. Al Brunner, the plant manager, hired Gonzalez on December 14, 2015 to work as a bagger. She was responsible for reviewing customer orders and placing the finished products in a plastic bag, which a machine then sealed.

While carrying out these responsibilities, Gonzalez received a great deal of criticism from her immediate supervisor, Phyllis Franz. Franz told her that she was incompetent, she would not keep her job, she needed to count better, and she needed to use her brain. D.E. 25, Pl.'s Ex. 3 at 19-21 (Gonzalez Dep.).[1] Franz "yelled all the time" at virtually all the employees. *Id.* at 20. Franz also threw tape at Gonzalez and pushed a cart towards her. Because Tape Case did not write up every reprimand given to an employee, there is no written record of Franz's comments to Gonzalez. However, Gonzalez was written up twice by Tape Case for incurring ten absences over her first six months.

Gonzalez found Franz's criticisms very distressing. On October 13, 2016, after Franz again critiqued her work, Gonzalez gathered her jacket and left the warehouse before the end of her shift. Other Tape Case employees testified that as Gonzalez was

---

[1] The parties dispute whether the declaration of Alex Moreno, who presented additional testimony about these statements, is admissible. The Court concludes that the Moreno exhibit would not change the outcome of the case and thus need not resolve the issue of admissibility.

2

leaving, she announced that she quit; Gonzalez denies saying that. Gonzalez went to her car and called the owner of the company to tell him about her interactions with Franz, who Gonzalez believed was violating Tape Case anti-harassment policies. The owner said he would call Gonzalez back but never did. The next day, Gonzalez returned and spoke to a supervisor, who asked her to return the following day so that she could speak with Brunner, the plant manager who hired her. On October 15, Gonzalez and Brunner spoke. He told her she had quit on October 13 when she walked off her shift; Gonzalez denied that she quit; and Brunner told her that, in any event, he could not re-admit her to Tape Case. As Gonzalez stated, "he told me, you know, you quit when you walked out the door saying you quit. I told him I didn't quit. I was upset and I couldn't believe what happened and that I tried to get in contact with the owner of the company and he never responded to me." *Id.* at 29.

Gonzalez, who is Asian-American and over the age of 40, filed a charge with the Equal Employment Opportunity Commission (EEOC). Gonzalez's EEOC charge describes her as Hispanic, but Gonzalez contends that was an error on the part of an EEOC employee who helped her fill out the charge form. As indicated earlier, Gonzalez asserts violations of Title VII, the ADEA, and a claim for breach of promises in the Tape Case employment handbook.

## Discussion

Tape Case has moved for summary judgment on Gonzalez's discrimination and contract claims. To prevail on its motion, Tape Case must demonstrate that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact arises only if

sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook Cty. Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010) (quotation marks omitted).

**I.     Title VII / ADEA**

First, Tape Case seeks summary judgment on Gonzalez's Title VII race and national origin discrimination claims, 42 U.S.C. § 2000e-2(a), and her ADEA age discrimination claim. 29 U.S.C. § 623(a). Courts apply the same "analytical framework" for Title VII and ADEA claims, so the Court considers these claims together. *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 n.3 (7th Cir. 2009). The issue is whether Gonzalez has presented enough evidence to permit a reasonable jury to conclude that her age, race, or national origin caused her termination. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The Court first addresses whether Gonzalez has established a *prima facie* case of discrimination under the *McDonnell Douglas* framework. Next, the Court "assess[es] cumulatively all the evidence" Gonzalez presented to determine whether a reasonable jury could find in her favor. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (employing the *McDonnell Douglas* framework first, then reviewing all evidence together per *Ortiz*).

**A.     *McDonnell Douglas***

Under the *McDonnell Douglas* framework, to establish a *prima facie* case of discrimination, Gonzalez must show (1) she is a member of a protected class, (2) her job performance met Tape Case's legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated employee who was not in the protected class was treated more favorably. *Khowaja v. Sessions*, 893 F.3d 1010,

1014-15 (7th Cir. 2018). Although there are subsequent steps in the *McDonnell Douglas* analysis, the Court concludes that Gonzalez cannot make out a *prima facie* case, as she has not offered any evidence from which a reasonable jury could find that a similarly situated employee outside her protected classes was treated more favorably.

"[T]he similarly situated requirement normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 404-05 (7th Cir. 2007) (internal quotation marks omitted). Gonzalez argues that "Franz did not make derogatory comments to similarly situated . . . employees, nor did [she] constantly watch them or make them feel incompetent." Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. at 10. But Gonzalez has not pointed to any evidence from which a reasonable jury could find that the other employees were similar in all material respects or that indicates that Franz treated Gonzalez differently. "[B]road conclusions" and "uncorroborated generalities" are insufficient to carry this burden. *Zayas v. Rockford Mem. Hosp.*, 740 F.3d 1154, 1158 (7th Cir. 2014). Gonzalez provides the name of one employee, but that is hardly enough for a reasonable jury to find that the employee is similar in all material respects. *See Threatt v. Jackson*, No. 06 C 3944, 2008 WL 1774986, at *10 (N.D. Ill. Apr. 16, 2008) (granting summary judgment for the defendant in a sex-discrimination suit in which a female plaintiff provided the names of purportedly similar male employees but failed to explain how they were similar). Because Gonzalez has not presented any evidence of a person similarly situated to her that Franz treated differently, she has

5

failed to make out a *prima facie* case.

### B. Other evidence

In addressing the case under the *Ortiz* totality-of-the-evidence approach, Gonzalez also relies upon Franz's disparaging comments to her. Gonzalez contends that Franz repeatedly told her that she was incompetent, she would not keep her job, she needed to count better, and she needed use her brain. Gonzalez also says that Franz threw rolls of tape in her direction and pushed a cart at her.

Gonzalez has presented the Court with evidence of sharp and perhaps unfair criticism, but not criticism that would permit a jury to reasonably infer that Franz was discriminating against Gonzalez on the basis of her age, race, or national origin. Standing alone, the evidence is insufficient to defeat summary judgment, as "[t]here is no inherently racial component" to a supervisor's "unfairly critical" conduct. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005). Gonzalez contends these comments were discriminatory because she was the only Asian employee in the warehouse. But "[s]imply being a member of a protected class, without something more to link that status to the action in question, is not enough to raise a reasonable inference of discriminatory animus." *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 900 (7th Cir. 2016). Gonzalez also argues that Brunner and Franz both stated during their depositions that there was a theoretical possibility that Franz had harassed Gonzalez, but this falls well short of evidence that Franz engaged in discrimination.

An even more fundamental problem undermines Gonzalez's argument. Even if the Court were to find that that Gonzalez had presented sufficient evidence for a reasonable jury to find that Franz intended to discriminate, it was not Franz's decision to

6

terminate Gonzalez, so her intent is immaterial. An employer is not liable for an underling's discriminatory conduct that is unconnected to the adverse employment action at issue. *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 381 (7th Cir. 2011). Although Tape Case contends that Gonzalez quit and was never fired, the Court must construe the facts in Gonzalez's favor on a motion for summary judgment, so the Court assumes that Brunner fired Gonzalez. But even if Brunner terminated Gonzalez in the mistaken belief that she had quit when she walked off the job, that is sufficient to demonstrate that Brunner terminated her for a non-discriminatory (if mistaken) reason.

Gonzalez contends that Brunner terminated Gonzalez under the influence of Franz's bias—an argument known as the "cat's paw" theory of liability. "The name is based on an old fable in which a scheming monkey convinces an unwitting cat to fetch roasting chestnuts from a fire. The cat burns its paw and the monkey gets the chestnuts. In employment discrimination cases, the 'cat's paw' is the unwitting manager . . . who is persuaded to act on another's illegal bias." *Id.* at 379. The Court finds this argument unconvincing, as Gonzalez has not presented any evidence that Franz's input or advice influenced Brunner's decision to terminate Gonzalez. A plaintiff cannot show that a supervisor was influenced by another's bias if the "causal relationship" between the bias and the action at issue is broken, and "the ultimate decision is clearly made on an independent and a legally permissive basis[.]" *Willis v. Marion Cty. Auditor's Office*, 118 F.3d 542, 547 (7th Cir. 1997). It is undisputed that Gonzalez, without permission, left her job at Tape Case mid-shift after a dispute with Franz. As Brunner *and* Gonzalez attest, when Gonzalez returned to Tape Case to speak with Brunner, he said that he believed she had quit her position and that he would not readmit her to employment.

7

D.E. 25, Pl.'s Ex. 3 at 29 (Gonzalez Dep.); *id.*, Pl.'s Ex. 5 ¶ 4 (Brunner Aff.). Gonzalez says she never said she quit while she was leaving the warehouse. But that is immaterial; all that matters is whether Brunner terminated Gonzalez's employment in the honest belief that she had voluntarily quit. If so, then Brunner was acting on "an independent and a legally permissive basis." *Willis*, 118 F.3d at 547. Gonzalez has not presented any evidence that casts doubt on this explanation. On this record, no reasonable jury could conclude that Franz's purportedly discriminatory conduct somehow influenced Brunner's decision.

Next, Gonzalez argues that the fact that a younger, non-Asian employee was hired to fill her position supports an inference that Tape Case acted with discriminatory intent. Though the fact that Gonzalez's replacement was younger or of a different race may support an inference of discrimination, it is a weak inference, but not enough without more to sustain Gonzalez's claim. As the Seventh Circuit has noted, the identity of one's replacement "*may* help to raise an inference of discrimination," but it is neither necessary nor sufficient for a discrimination claim. *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996).

**C. Conclusion**

Having collected the evidence cited by Gonzalez "in a single pile," the Court may now answer whether the evidence, taken together, is enough to permit a reasonable jury to conclude that Gonzalez's age, race, or national origin caused her discharge. *Ortiz*, 834 F.3d at 765-66. The Court concludes that no reasonable jury could find for Gonzalez. Gonzalez presented Franz's criticisms as direct evidence of discrimination, but she has offered no evidence that links these critical statements to Gonzalez's age,

8

race, or national origin. Gonzalez also argued that Franz singled her out, as her similarly-situated peers were not criticized for similar conduct. But Gonzalez failed to present any evidence about the other employees, so no reasonable jury could find that they were actually similarly situated. Finally, Gonzalez noted that a younger, non-Asian employee was hired to replace her, but this is not enough standing alone to support a reasonable inference that her termination was discriminatory. Given the absence of evidence in support of Gonzalez's claim, no reasonable jury could find that her termination was the result of age, race, or national origin discrimination.[2]

## II.     Handbook

Next, Tape Case has moved for summary judgment on Gonzalez's "harassment / violation of employee handbook" claim. Though the face of the complaint does not make it clear what type claim Gonzalez intended to bring, the Court joins both parties in addressing it as a breach of contract claim.

Gonzalez argues that Tape Case promised, through its employee handbook, that harassment was prohibited and that Franz's conduct breached this promise. As the handbook states, "[w]e prohibit harassment of one employee by another employee, supervisor or third party for any reason based on a 'protected class[.]'" D.E. 25, Pl.'s Ex. 7 at 6 (Tape Case Employee Handbook). But Gonzalez's claim ignores an earlier clause that states that "[t]he provisions of this Employee Handbook are not intended to

---

[2] In a rather florid aside, Tape Case posits that "[o]ur justice system needs to do something to prevent disgruntled employees from hiring shysters to shakedown owners with threat of expensive, meritless litigation." Def.'s Reply Br. at 4. Our justice system *has* done something: it employs summary judgment to screen such suits before trial. In the future, defense counsel would be well-advised to employ its summary judgment briefing to help the Court fulfill this function, rather than disparage the opposing party and counsel.

create contractual obligations with respect to any matters it covers." *Id.* at 1. When an employee handbook states that it is not intended to create contractual obligations, courts honor the disclaimer. *Garcia v. Kankakee Cty. Hous. Auth.*, 279 F.3d 532, 535-36 (7th Cir. 2002). Because Gonzalez has no contractual right to enforce against Tape Case, the Court finds that no reasonable jury could find for Gonzalez on this claim.

## III. Sanctions

Finally, both parties have moved for sanctions. "[A] court should apply Rule 11 sanctions only with 'utmost care and caution.'" *Lanphere v. 1 Corp.*, No. 10 C 4774, 2012 WL 1965436, at *2 (N.D. Ill. Apr. 23, 2012) (quoting *FDIC v. Tefken Constr. & Installation Co.*, 847 F.2d 440, 444 (7th Cir. 1988)). Tape Case argues that it is entitled to sanctions, as Gonzalez's claims either rely on misrepresentations of the record or are unsupported by fact or law.

First, Tape Case contends that Gonzalez misrepresented the record in support of her claims. It argues that Gonzalez's assertion that she never received any written warnings for her performance is false, as she received two for excessive absenteeism. The Court finds that Gonzalez could reasonably distinguish between a warning for work performance and a warning for absenteeism; this is not a false representation that warrants sanctions. The remaining "misrepresentations" that Tape Case cites are either not untruthful or not material.

Tape Case also contends that Gonzalez's claims are factually baseless. The Court finds that Gonzalez could state a non-frivolous discrimination claim on this record, even if Tape Case ultimately obtained summary judgment on the same claim. "[I]t does not follow that Rule 11 sanctions should be imposed in every instance a motion is

denied, a pleading struck, or summary judgment granted." *Marco Holding Co. v. Lear Siegler, Inc.*, 606 F. Supp. 204, 215 (N.D. Ill. 1985). Next, Tape Case contends that Gonzalez's claim arising from the employee handbook was legally baseless, as the handbook plainly did not confer an enforceable right. But sanctions are unnecessary, as this was a minor claim in a much larger case. Finally, Tape Case's arguments based on Gonzalez's supposed misconduct in discovery and in filing her LR 56.1 statement do not indicate conduct so serious as to justify imposing sanctions. For these reasons, the Court denies Tape Case's motion for sanctions.

Gonzalez also moved for sanctions, declaring that Tape Case's motion for sanctions was improper. The Court has found that Tape Case is not entitled to sanctions but declines to further hold that the decision to pursue sanctions was so baseless as to entitle Gonzalez to sanctions. The Court denies Gonzalez's motion.

**Conclusion**

For the foregoing reasons, the Court grants Tape Case's motion for summary judgment [dkt. no. 15]. The Court denies the motions for sanctions [dkt. nos. 28, 33]. The Clerk is directed to enter judgment in favor of defendant and against plaintiff.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 25, 2018